Good morning, and may it please the court. My name is Lou Maone. I represent the plaintiff appellant in this matter, New Fortune Inc. As the court is well aware, the lower court dismissed the complaint in this matter and also denied plaintiff's motion for reconsideration. When did you make that motion for reconsideration? Excuse me, Your Honor? When did you make that motion for reconsideration? Oh, no, nevermind. You never made a motion to file an amended complaint, did you? We made the motion for reconsideration after we had filed the amended complaint. The amended complaint was what the defendants moved to dismiss. But aren't you complaining in this case about the judge's failure to allow you to file yet a third amended complaint? Essentially, yes, Your Honor. The judge should have, the lower court should have given us leave to replead, given what the- But you didn't ask for leave to replead. Excuse me? You did never ask for leave to replead, did you? Not initially, no, Your Honor. We didn't. Well, not initially or ever. Yeah, in the motion for reconsideration, we did, yes. You never asked for leave to replead as I read the papers in front of me. Isn't that correct? I don't think so, Your Honor. I think in the motion for reconsideration- The motion for reconsideration is not a motion to amend. That's correct. Motion for reconsideration is a motion to bring in some new stuff. And so that's a different thing. That's correct, Your Honor, but the lower court should not have closed the case in the first place because- Could we first, I'm sorry, I'd like to get to your complaint. And I wanna know what your complaint says. Is your complaint a complaint that this was, there was delay, or is your complaint a complaint that there was a breach of a contract to do something that they didn't do? That's what I wanna focus on. The complaint, Your Honor, was directed at the fact that there was, quote, unquote, a delay, which in our opinion is a cancellation. And a cancellation is non-performance of a contract. I'm sorry, a delay in the normal course of things is covered by the Montreal Convention. What I wanna know is whether you pled in the original complaint that they were bound to bring your stuff in an undivided flight, whether that was the contract that you made and that contract was breached. I wanna know whether you made that complaint. Yes, Your Honor, that was the- Is that in the complaint? Yes, Your Honor, I believe it is. The fact of the matter is that there was a contract and the contract called for a delivery in two days on a direct flight. It was bargained for and the consignor in China paid a higher valuation. And we pleaded that in the amended complaint. The fact of the matter is that that was the contract of carriage. And the lower court agreed, by the way, that the Montreal Convention agreed with the defendants was the only avenue of redress here for the plaintiff, although we disagree with that. However, certainly the plaintiff pleaded a plausible claim under the Montreal Convention. You never did that. You never asked for damages under the Montreal Convention. We, in paragraph nine of- You never signed damages under the Montreal Convention, even though you alluded to the Montreal Convention to find jurisdiction, isn't that correct? That's right, Your Honor, because we believe and we still do that there are state claims available to us. But why didn't you ever plead the Montreal Convention for damages? Even after you were alerted to it by, I think it was Aeroflot who used it as a defense in their response to this case. Because we firmly believe that there are state causes of action here. I know, okay. Such that- Tell me, okay, you gave up on the Montreal Convention and whether you were wise to do that or not, I don't know. But I wanna know precisely what the state causes of action that you say are, because what you began by saying, delay, that is not a state cause of action, that is preempted. So I wanna know what it is that you are saying was non-performance, that is a breach of contract, because that is not preempted by the Montreal Convention. So I wanna know where in your complaint you say that and what those damages are. Your Honor, we pleaded a breach of contract, I think it's at paragraphs 48 and 49 in the amended complaint, saying that the inordinate delay, which is equal to a cancellation, is a breach of the contract under these circumstances. The inordinate delay is not a breach of a contract. The only thing that may be a breach of a contract is that this was not done by a direct flight, rather was done by a two-segment flight. That could be a breach of a contract, and then the damages that flow from that, because it was held up in Moscow, might be available to you. But the delay in itself is not given the Montreal Convention a breach of a contract. Your Honor, that is exactly what we pleaded. That cargo should have gone on a direct flight. That's what we bargained for. The fact that it went to Moscow and disappeared is not a delay. I don't think anybody in this courtroom has ever had a delay of a flight for three weeks. The fact of the matter is it disappeared, and that means it wasn't performing under an air transportation contract. Counsel? Excuse me? Even if what you say is correct, wouldn't it have been prudent to plead the Montreal Convention in your amended complaint? Your Honor, you're absolutely correct, but I thought under paragraph nine where you said the court, if we do not prove the state claims, the court has jurisdiction under the Montreal Convention. Right, jurisdiction, but you didn't plead a cause of action for damages under the Montreal Convention. You're correct, Your Honor. And my answer to that is, under Johnson v. City of Shelby, the Supreme Court case, and the case that was decided in this court last June in the matter of Bench v. The Estate of Amar, a plausible cause of action is what entitles a plaintiff to be able to replead. We also have in the Southern District, Your Honor, a material deviation rule, which is called into effect in some cases based on St. John's Shipping v. S.A. Compania, which is a Supreme Court case, 263 U.S. 119. And that case and several others in this Southern District, Niponkoa v. Watkins Motor, Praxair v. Mayflower, relied on a case in the First Circuit, which Justice Breyer wrote in Hill v. American Airlines. In cases of shipment by air, rail, and truck, where the shipper paid an additional charge to ensure specialized measures to reduce the risk of damage to cargo, the carrier's failure to perform, which resulted in the damage, has been found to be a sufficient basis to allow rescission of the liability limitation provision. Okay. That's all true when we know that. So I want to know where in your amended complaint you say specifically or adequately to get by 12b-6 that you made a contract for direct shipment. 500,000 masks were shipped directly. 500,000 masks were not. That was a breach of contract. And that is so before any question of a Montreal Convention, which you, my presiding judges indicated foolishly, didn't then plead. But I want to know where you did that, because that's the only case that you have. Your Honor, I believe we did that throughout the amended complaint, and as the court may not be aware, the amended complaint, throughout the amended complaint, is a very undefinite way of saying. I want to know, if somebody tells me something is throughout everything, I usually say, you didn't say it. Just read us the language you're relying on. Excuse me, Your Honor. Point us to the language you're relying on. Your Honor, A-15 of the record, the first cause of action for breach of contract was carriage. You say breach of contract. That's good. Now, what was the breach? Maybe you ought to look at that. Paragraph 42, Your Honor, it says, in part, that the consignor, or consignee, with an alternate way to ship cargo, knowing that it was not on direct flight to New York, as they had made known, and was agreed by Apex. That was the breach. Okay. We wanted a direct flight, and there was a reason for it, Your Honor. A specific reason, a pandemic. A pandemic. Actually, in the lower court, Apex argued that who could expect anybody to live up to something like that because it was a pandemic? Well, spoiler alert, Air China got us those 500 masks in two days. The reason we didn't get the other 500,000 masks in two days was because it went off someplace on anything but a direct flight. Okay, thank you. Thank you. Thank you. You've reserved some time for rebuttal, I believe. You've reserved two minutes for rebuttal. Good morning, Your Honors, and may it please the court. My name is Timothy Nask, and along with Thomas Tisdale, we represent Apex Logistics International CN Limited. The January 29 opinion in order of the district court should be affirmed. The first amended complaint that was dismissed by the district court clearly and unmistakably pleads a delay to an international shipment of cargo carried by air between party states to the Montreal Convention. Plaintiff NFI cannot retreat from the fact that it is a delay. It may call it an inordinate delay, but the facts in the first amended complaint. But they have now, under a little bit of pressing from me, I'm sorry, said that they contracted to have a direct flight, and a direct flight was not done with respect to 500, and that therefore there was a delay and damages. If their plea is that it was a breach of contract not to make a direct flight, that isn't covered by the Montreal Convention. And if that is so, all the talk about delay is simply a statement about the damages that flowed from that. So I want to know why this was not a breach of contract to begin with, which is not, you know, that's not covered by the Montreal Convention. Non-performance breach of contract is not, delay is. But if delay is simply the damages that flowed from the breach of contract, then the Montreal Convention ain't there. Your Honor, the Montreal Convention does cover a breach of contract. Article 29 of the Montreal Convention, the preemptive language, does talk about, it covers the claim no matter how founded. Now, I should also note that at paragraph 22 of the first amended complaint, New Fortune says that it had no problem with splitting the shipment. So I think that's important to note. The contract of carriage in this case is the waybill. If there was some other contract explicitly calling for a direct flight, I think they would have attached it to the complaint or pled it. Because the first amended complaint. If I send something and say it must go in this way and you don't send it that way, that is a state cause of action, isn't it? I would say that it's still subject to the Montreal Convention, Your Honor. That normally it would be a breach of contract claim. All the cases indicate otherwise. I think that all the cases that are cited for this non-performance doctrine involve a situation where a passenger is bumped off of a flight and offered no transportation. That's not what we have here. Now, you can't analogize the passenger cases to a cargo case, but the fact is that the cargo did arrive and that is a delay. And I'd just like to address, if Your Honor would indulge, I'd just like to address a couple of other points. Leave to amend the complaint was not requested. That no motion filed, no cross-motion. There was, in the motion to dismiss, it was not even raised. But the- Let me ask you this. What did the Montreal Convention caps, assuming there's a viable claim here under the circumstances of the transit here, the Montreal Convention caps damages at what? It caps damages at a weight limitation amount. It refers to special drawing rights and it's calculated based on the weight. And in this case, in our brief, we did say that it's approximately- $16,000? It's 66. 66. But it varies based on international currency exchange. So I see that my time is expiring. New Fortune states at page 30 of its initial brief that one cannot dress up a delay claim as one for non-performance. However, it does precisely that. It's- Well, that's the question. That's the question, isn't it? Is this a delay claim dressed up as non-performance or this is a non-performance claim because you agreed to send something by direct flight and then sent it instead indirectly? Now, if they agreed with that, then there's no breach of contract. So we have to look at the complaint to see whether they agreed that because this is 12B6. If they agreed to a split flight, then you're home clear. Well, on paragraph 22, which council directed us to, it does say the consigner had no problems with the premise of a split shipment so long it was informed timely as such by Apex. Now, was it informed? Well, plaintiff alleges in the complaint, and that's what we're talking about, that there was miscommunication. They do. I mean- You never told them? There was, they were informed that there were issues with the shipment. Precisely what was told and what was- Is that a factual question because of which 12B6 doesn't lie? Your Honor, we- That is, if they said you must ship directly unless you get our okay, and they say you did not get our okay, and you say we did, that's a factual question, and so we're beyond 12B6. You may well win a summary judgment, but if that's the issue, then we're beyond 12B6. Your Honor, we would submit that the fact that the delay is clearly pled that you don't get into these questions of the contract. The delay, the delay, if all they are saying there was delay, you win. If they're saying delay were the damages because you breached the contract, because you agreed to send it by direct flight, unless we okay the split, then the delay is just damages and can't get you out of it. Your Honor, I would just, I see that my time has expired, but I would just note that we were not able to locate any cases that go this way that would permit this sort of pleading. Maybe there was a contract that would get us out of the Montreal Convention because the Montreal Convention does apply to breach of contract. But these are all, as Judge Calabrese suggests, factual issues that would lend themselves to discovery. Your Honor, I mean, if there was a contract that needs to be sent and formation, the requirements for a contract, clearly they would have the contract, and they would have pledged a contract on this date where the parties agreed. One of the problems is that until the pandemic, these shipments contracts were mighty vague. And so, you know, we got to know whether there was a contract that was enough of a contract so that we can say it was a breach of contract, or at least whether that was pled because we're at 12B6. Correct, it's a 12B6 motion. We would submit that under Iqbal and Twamey, you need to plead with sufficient plausibility, the contract terms, and that wasn't done here. Let me ask you this. Why on the basis of this record isn't New Fortune entitled to recover $66,000? I mean, the court below, in effect, denied him all recovery, don't you? Wouldn't you concede that he's owed $66,000? Your Honor, if it was pled, and we do not concede that he's owed anything because there is an affirmative defense on the Montreal Convention. So had this been pled and the case proceeded, the carriers would have an affirmative defense on the delivery. What's that? That they took all reasonable measures to get the cargo to its destination. In other words, there's nothing more- Couldn't get it out of the warehouse for 20 days? Yeah, that's what's pled in the complaint. They say that the cargo was in the warehouse in Moscow for 20 days. But isn't that, again, at most, a factual question that comes later? Your Honor, we would submit that a delay is a delay. Yeah, no, no. Why isn't he entitled to litigate the, I mean, the result that the court below reached strikes me as unduly harsh. I mean, he doesn't even get the $66,000, which it's hard to believe he's not owed. Your Honor, our position on that is that it simply wasn't pled and there was no leave to amend to include that claim. The motion for reconsideration- I mean, the whole case was litigated over, I mean, he's going down this road to, obviously, to avoid the damage litigation under the Montreal Convention. So this whole case was litigated in the context of a Montreal Convention limitation. It permeates the entire case. So to say that, you know, it wasn't there seems to me to be sophistry. Your Honor, our response to that would be that that New Fortune, you know, made a conscious effort not to plead the Montreal Convention. Yeah, I mean, your claim is a fairly simple one. They didn't plead a breach of contract, non-performance. That's what you're saying about- We're not saying that he pled in non-performance, Your Honor. Yeah, you're saying they didn't plead non-performance and they didn't plead the Montreal Convention. And therefore, while they're certainly owed some damages, they didn't plead him. Yeah, and they may have been owed damages because like I said, you know, if a Montreal Convention claim was pled, the carriers would have affirmative defenses. Well, we're not conceding that- No, no, of course. But at least you're saying we never get to that because they didn't plead the Montreal Convention. That's correct, Your Honor. So don't you agree with Judge Parker that the district court was unduly harsh in not allowing them to amend their complaint? I do not- Although he already agreed, counsel already agreed that they didn't ask to amend the complaint. You can't grant something that's not asked for. Right, I don't think that leave was requested and New Fortune is claiming that the district court abused its discretion by not allowing an amendment that was not requested. So if you don't want the Montreal Convention, you shouldn't now be able to sort of just get it as a fallback. But you know, there's a little bit odd to say that they didn't want the Montreal Convention and that they didn't actually plead breach of contract. I mean- Well, Your Honor, I mean- I understand, but you're saying that they are, that they're doing something which is absurd, that on the one hand, they didn't plead breach of contract. And on the other hand, they didn't plead the Montreal Convention. So what were they doing? We're saying that they did plead a breach of contract claim. They pled a breach of contract claim. They did not plead a non-performance claim. Okay. Thank you, counsel. Thank you, Your Honors. We'll hear from Araflot. Good morning, counsel. Good morning, and may it please the court. My name is Marissa Lefland, and I'm from the law firm of Condon and Forsyth for Araflot. I'd like to echo everything that Mr. Nast just said as to why the orders of the district court should be affirmed in their entirety. I'd like to talk a little bit more about why this claim for breach of contract is not cognizable in light of the Montreal Convention. Much has been made about the length of the delay. The length of the delay is immaterial for purposes of applicability of the Montreal Convention. And every case- That can't be true. Pardon me? That can't be true. Suppose it sat around the warehouse for three years. There have been numerous cases in federal courts, in state courts, involving really egregious delays. Delays where the carrier would know that a delay of this nature would be upsetting, devastating, would lead to significant damages. And the courts in all of those cases have held that the Montreal Convention governs those claims. I have a different question. If the plea is that they didn't send this stuff directly without permission, then that's a plea against APEX. Where do you come in at all? I mean, if a plea is that they should have sent it directly by APEX, by one flight, I don't know where Air Flot comes in. Air Flot only comes in maybe in its relation with APEX, but I don't know what they're claiming about you because if there was a delay due to you, the damages were still due to the fact that APEX didn't send the thing directly. So I don't know why you're in the case at all. If their only plea, which is a valid one, is there. If the only plea, which is a valid one, is as against APEX, then I'll go ahead and agree with that. I mean, you understand what I'm saying? Yes. If the contract was with APEX, send this directly unless we give you permission. And permission was not given. That's the complaint. I see that as a claim against APEX. I don't see why the fact that once APEX split it and Air Flot may have been liable for the delay, I don't know where that affects the plaintiffs. It may affect something between you and APEX, but I don't understand how it brings in the plaintiffs. Your Honor, with respect to any type of state law claim that may be cognizable here, I would agree that there is no such claim against Air Flot. As this court has held for decades, any claim against an air carrier as a result of damage to cargo in international transportation is governed by the Warsaw Convention. And just last month, this court held that in Cohen versus American Airlines, at the Montreal Convention, similarly exclusively governs claims arising against air carriers. So to the extent that there is any claim against Air Flot in this case, it is strictly under the Montreal Convention. Do you have any defense to a Montreal Convention claim in this case? Yes, Your Honor. We pled the defense under Article 19, which is the all reasonable measures defense. So what were the reasonable measures to obviate this 20-day delay? Candidly, Your Honor, I don't know. I mean, it sounds just, you know, I don't know, but it sounds just entirely pro-forma on your part. To plea Article 19, you're saying? Yeah, what's, I mean. What's your defense? What's your defense to a delay claim? It depends. It sat around the warehouse for 20 days. It did. In which you couldn't, it was too heavy to move. You couldn't, didn't want to be bothered, didn't know where it was. What's going on here? Well, I will say that as the parties have pointed out, this delay occurred, I don't want to say the height of the pandemic, but when the pandemic was truly out of control and shipment international. Well, but that would be enough of a claim if the Montreal Convention is adequately pleading at most that's way down the line, not subject to a 12 B six. I mean, it's very hard. You may conceivably convince somebody that because of a pandemic, this extraordinary delay gets you out of a Montreal Convention liability, but that's mighty difficult and certainly not 12 B six. So your only defense at this point has to be the Montreal Convention wasn't pleaded and Bova judge was harsh. It wasn't pleaded. But to say to the judge Parker, oh, we got a good defense is really laughable. Your Honor, I see that my time is expired. May I respond to that question? Of course. Your Honor, this was an intentional decision to not plead a Montreal Convention claim. At every turn, this strategy was repeated. And if I was aware that we were going to move to dismiss, and once we did move to dismiss, and was emphatic that the Montreal Convention doesn't apply here. You know, what makes this difficult for me to understand is that on the one hand, if they're not pleading the Montreal Convention, it seems very likely that they pled non-performance. That is, I have to read, unless they're completely out of their mind, I have to look at this complaint as if they're doing that. And that would seem to make sense to me, except that at that point, I don't understand what they're pleading, why we're going after you. That makes it very difficult for me to understand this complaint, because almost every way I go, there's something that is inconsistent in it. Yes, Your Honor. And to the extent, again, that this is a non-performance claim, I would agree with you that Aeroflot is not the appropriate target defendant here. So for all of these reasons, Your Honor, and if I respectfully request that this court affirm in its entirety. Thank you, counsel. Mr. Maione, you have two minutes for rebuttal. Mr. Maione, wouldn't it be, would it not be correct to say that your strategy throughout this litigation was not to plead the Montreal Convention, because you just did not want to be stuck. You had arguably seven-figure losses, and you did not want to be stuck with the Montreal cap. Absolutely. That explains your... Absolutely, Your Honor, A. But B, I believe that there are state causes of action here, and that the Montreal Convention does not apply. Now, Mr. Nass said, there was no, plaintiff had no problem with splitting the shipment. No, we had no problem with splitting the shipment, but that shipment had to get there in two days. That was the contract. Article 11... Now we're talking delay. Excuse me? Now we're talking delay, not... No, we're not talking delay. That was... Senate had to get there in two days. I'm talking about what the contract of air carriages. You cannot make a contract under a Montreal Convention that says it has to get there by a particular time. That is what is exactly covered by the Montreal Convention. You can make a contract which says it has to go directly. That you can do, but you can't make a contract which says it can go indirectly, and by the way, if you don't get it there on time, we're not under the Montreal Convention. That you can't do. And that's not... Pardon me, Your Honor, you're correct, but that was... I know I'm correct. I'm sorry. But that's what we wanted, was a direct flight. And for... You just said a moment ago, we had no problem with an indirect flight. No, I said we had no problem with it splitting up. If I said that, I misspoke. We had no problem with it being split up, but we wanted... Oh, you had no problem with 500 going at one time and 500 going at another? They were supposed to go at the same time. Okay? Now, under the Montreal Convention, well, first of all, the air bill is prima facie evidence of the conclusion of the contract. Let me ask you, if your claim is that they breached the contract because they didn't send it directly, what claim do you have against Aeroflot? Your Honor, Your Honor, at this stage of the pleading, we don't know what happened. I know you don't know what happened afterwards, but your contract was supposedly with Apex to send it directly. They were... And they didn't. Aeroflot, Aero... I'm sorry, Your Honor, if I interrupted. Aeroflot was a party to that air contract. They knew they were supposed to deliver it on a direct flight. Instead, it went to Moscow. As Judge Parker pointed out, even if we're under... You had a contract with Aeroflot to make a direct flight from China to... Where is Aeroflot doing in China? What is it doing in China? Yeah, you had a contract with Aeroflot to make this direct flight without stopping... We had a contract with Apex, who is the agent. We've cited in our briefs that freight forwarders have been deemed to be agents for the carriers. The fact of the matter is Aeroflot knew this was supposed to be a direct flight. As Judge Parker pointed out, if we were at the point where we got discovery under the Montreal Convention for a delay... Was Aeroflot... Could Aeroflot have been the initial carrier? I suppose it could have, yes. How? How? Yeah. I don't know who Apex decided how to pick somebody. We don't know that. They picked Aeroflot? They picked Aeroflot and Air China, yes. They did. And Aeroflot flies... This wasn't from Beijing. Where was this from? Hudong. Aeroflot flies in and out of Hudong? Apparently. They flew out of... I don't know. I'm asking you. As far as I know, yes. They fly out of Hudong. Do they fly out of Hudong to where you wanted these things to go finally? Yes. They fly to New York from Hudong. Aeroflot flies from... Yes. Okay. And as Judge Parker pointed out, if we had discovery under the Montreal Convention, because delay isn't, you know, delay and we're out of it. Delay says under the Article 19, the carrier shall not be liable for damage occasioned by delay if it proves that it and its servants and agents took all measures that could reasonably be required to avoid the damage. That's under the Montreal Convention. I understand that, Your Honor, but in discovery, if we found Aeroflot just left the stuff on the runway for three weeks, knowing they were supposed to deliver it directly, we have a claim. You just made a case for discovery under the Montreal Convention. Why didn't you ever plead the Montreal Convention? Your Honor, with all due respect, I thought we did as an alternative when we said in paragraph nine of the amended complaint. By the way, the amended complaint completely pushes out the first complaint and we didn't get permission from the lower court to put in an amended complaint. We just said we were gonna do it because we knew we had time to do it. Under paragraph nine of the complaint, we said if the state claims do not obtain, the court has jurisdiction. Jurisdiction, right. But, Your Honor, Judge Coates found that the Montreal Convention completely applied here and completely exempted the plaintiff. Okay, well then, as Judge Parker pointed out, how am I gonna get my damages if she closes the case? It doesn't make any sense. I'd like to ask a question, if I may, of the air-flot lawyer. Does air-flot fly directly from China, from Wuhan to New York? Not to my knowledge, Your Honor. Well, do they fly, can you get on an air-flot flight in China and end up in New York, even if it's not a non-stop flight? Yes, you can connect in Moscow and, I imagine, in other places in Russia. But, to my knowledge, absent special permission by the U.S. government, an air-flot flight is not going to fly directly from another country to the United States without stopping in Russia first. So, it could have picked up this cargo, or it could have stopped in Moscow, taken off and gone to New York. All you're saying is it doesn't fly non-stop. It doesn't fly non-stop, and I don't know if there are any direct flights, and by that, I mean a flight that, where the cargo would switch aircraft. I don't know about that. My understanding is that there were two different flight numbers in this case, the flight from China to Moscow, and then from Moscow to the United States. Yep. Thank you, counsel. Thank you. Thank you, and your time has expired. Yes, Your Honor. Thank you all very much. Thank you all. We'll reserve decision. Thank you. Very lively argument.